IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| James Edward Beard, Jr, | ) | Civil Action No. 8:16-cv-03223-BHH-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Nancy A. Berryhill, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for social security insurance benefits ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

In March 2013, Plaintiff filed an application for SSI, alleging an onset of disability date of December 16, 2012 [R. 221–37], which was later amended to March 27, 2013 [R. 92–93]. The claim was denied initially and upon reconsideration by the Social Security Administration ("the Administration"). [R. 115–43, 146–49, 159–60.] Plaintiff filed a request for hearing before an Administrative Law Judge ("ALJ"), and on March 4, 2015, ALJ Sherman D. Schwartzberg conducted a video hearing on Plaintiff's claims. [R. 90–106.]

The ALJ issued a decision on April 14, 2015, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 74–84.] At Step 1,[3] the ALJ found Plaintiff had not engaged in substantial gainful activity since March 27, 2013, the application date. [R. 76, Finding 1.] At Step 2, the ALJ found Plaintiff had severe impairments of visual field constriction, status post clavicle fracture with chronic shoulder pain, and adjustment disorder and cognitive disorder from a traumatic brain injury. [R. 76, Finding 2.] At Step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that med or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 77, Finding 3.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, routine, repetitive work at the light

---

[3] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

exertional level as defined in 20 CFR 416.967(b) which requires only occasional posturals[4] except for no climbing of ladders, ropes, or scaffolds. In addition, the claimant can occasionally perform overhead reaching bilaterally and should avoid concentrated exposure to hazards.

[R. 77, Finding 4.]   Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform his past relevant work as a heating/air installer/servicer.  [R. 82, Finding 5.] However, based on Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  [R. 82, Finding 9.]  Accordingly, the ALJ concluded Plaintiff had not been under a disability, as defined in the Act, since March 27, 2013, the date the application was filed.  [R. 83, Finding 10.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Appeals Council declined review.  [R. 1–4.]  Plaintiff filed the instant action for judicial review on September 26, 2016.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends this case should be remanded.  [Doc. 19.]  Specifically, Plaintiff contends the ALJ

1.  failed to properly account for Plaintiff's visual field constrictions in the hypothetical to the VE [*id.* at 10–13];

2.  failed to explain his findings regarding Plaintiff's RFC as required by SSR 96-8p because the ALJ failed to account for moderate difficulties in concentration, persistence, and pace in assessing the RFC and failed to

_____

[4] The undersigned notes that "posturals" includes activities such as climbing stairs and ramps, balancing, stooping, kneeling, crouching and crawling.

explain how he determined that Plaintiff could perform light work lifting requirements and occasionally lift overhead [*id.* 13–17]; and

3.      failed to properly evaluate Plaintiff's credibility [*id.* at 17–20].

The Commissioner contends the decision is supported by substantial evidence and should be affirmed.  [Doc. 20.]  Specifically, the Commissioner argues

1.      substantial evidence supports the ALJ's assessment of Plaintiff's vision impairment [*id.* at 9–11];

2.      the ALJ properly assessed Plaintiff's moderate concentration, persistence, or pace difficulties [*id.* at 11–12];

3.      substantial evidence supports the ALJ's assessment of Plaintiff's left arm impairment [*id.* at 13–15]; and

4.      substantial evidence supports the ALJ's well-founded credibility determination [*id.* at 15–17].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than

4

a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42

U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new

material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

     In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C.

§ 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by

amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of

Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

---

2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 416.920.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* § 416.974–.975.

**B.** *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.** *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without

considering the claimant's age, education, and work experience.[6]  20 C.F.R. §
416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the
statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65
F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the
claimant's residual functional capacity[7] with the physical and mental demands of the kind
of work he has done in the past to determine whether the claimant has the residual
functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior
work, the burden of proof shifts to the Commissioner to establish that the claimant could
perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g);
*Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the
Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the
"grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers
primarily from an exertional impairment, without significant nonexertional factors.[8]  20

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R.
§§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his]
limitations."  20 C.F.R. § 416.945(a)(1).

[8]An exertional limitation is one that affects the claimant's ability to meet the strength
requirements of jobs.  20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

---

affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 416.969a(c)(1).

## II. Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III. Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the

opinion, 20 C.F.R. § 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v.*

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V. Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> 
> ...
> 
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity,

severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.   Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**RFC Analysis**

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

SSR 96-8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.* Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.)

> Age and body habitus (i .e., natural body build, physique,
> constitution, size, and weight, insofar as they are unrelated to
> the [claimant]'s medically determinable impairment(s) and
> related symptoms) are not factors in assessing RFC . . . .

*Id*. at 34,476.

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id*. at 34,477. SSR 96-8p specifically states, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted ." *Id*. at 34,478. Thus, an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

In *Mascio v. Colvin*, the Fourth Circuit found that "the ability to perform simple tasks differs from the ability to stay on task" and that "only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." 780 F.3d 632, 638 (4th Cir. 2015).[9] The *Mascio* court found it reversible error that the ALJ did not explain her

---

[9]In *Mascio v. Colvin*, the claimant asserted that the hypothetical to the VE was legally insufficient in failing to include her mental limitations. 780 F.3d at 637. The ALJ found the claimant had an adjustment disorder and also that she had moderate difficulties with concentration, persistence, or pace as a side effect of her pain medication. *Id.* at 638. However, the ALJ did not include in his hypothetical to the VE any mention of the mental limitations. *Id.* at 637. The court agreed with other circuits that have held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.' *id.* at 683 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (noting that the Eleventh Circuit joined the Third, Seventh, and Eighth Circuits)), and remanded the case because the ALJ gave no explanation as to why the claimant's moderate limitation in concentration, persistence, or pace did not translate into a limitation in her RFC, *id.*

consideration of Plaintiff's limitations in concentration in the RFC or present the limitation

to VE in a hypothetical, opining that

> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

*Mascio*, 780 F.3d at 638 (internal citation omitted).  Following *Mascio*, several cases in this

district and in other districts within the Fourth Circuit have found that a limitation to simple,

unskilled work is insufficient to address moderate limitations in concentration, persistence,

and pace absent further explanation.  *See Herren v. Colvin*, No. 1:15-cv-00002-MOC, 2015

WL 5725903, at *6 (W.D.N.C. Sept. 30, 2015) (finding a hypothetical containing a

restriction to "simple, routine, repetitive tasks" failed to address the claimant's ability to stay

on task); *Desilets v. Colvin*, No. 2:14-cv-1693-RBH, 2015 WL 5691514, at *4–5 (D.S.C.

Sept. 28, 2015) (finding a limitation in the RFC to "simple, repetitive tasks that are low

stress and require no major decision-making or changes in the work setting in crediting

some of her complaints of increased mental symptoms with stress" did not "sufficiently

address the claimant's limitations in concentration, persistence, or pace as they relate to

the RFC"); *Jones v. Colvin*, No. 4:14-cv-200-RN, 2015 WL 4773542, at *6 (E.D.N.C. Aug.

13, 2015) ("[T]he hypothetical question to the VE contemplated an individual 'limited to

simple, routine, repetitive tasks; should work in a low production occupation, one which

would require no complex decision making, constant change or dealing with crisis

situations.'  The majority of courts in North Carolina, including this court, have held that

such restrictions do not adequately address a claimant's moderate limitations in concentration, persistence and pace."); *Bailey v. Colvin*, No. 5:14-cv-248-DCN, 2015 WL 2449044, at *13 (D.S.C. May 21, 2015) (finding a limitation in the RFC to "only simple, routine, repetitive tasks; he must work in a static work environment (which I define as an environment with few work place changes)" did not account for the claimant's "limitations in concentration, persistence, or pace as to his ability to *stay on task*") (emphasis in original); *Scruggs v. Colvin*, No. 3:14-cv-00466-MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (finding that an ability to perform simple, routine, repetitive tasks in a nonproduction environment, without more, does not account for claimant's moderate difficulties in concentration, persistence, and pace); *cf. Falls v. Colvin*, 8:14-cv-00195-RBH, 2015 WL 5797751, at *7 (D.S.C. Sept. 29, 2015) (finding remand was not required because the ALJ adequately addressed claimant's ability to stay on task by including the limitation "she could concentrate, persist, and work at pace to do simple, routine, repetitive tasks at one and two step instructions for extended periods, say two hour periods in an eight hour day"). This court "has consistently held that an ALJ accounts for moderate limitations in concentration, persistence, or pace by explaining how this functional limitation was considered as part of the RFC assessment." *Worthy v. Colvin*, No. 1:15-3555-MBS-SVH, 2016 WL 3102121, at *19 (D.S.C. May 6, 2016) (collecting cases), *Report and Recommendation adopted by* 2016 WL 3079689 (June 1, 2016).

In this case, the ALJ found Plaintiff had moderate limitations in concentration, persistence, or pace. [R. 80.] Although the ALJ explained his consideration of the evidence in finding that Plaintiff's limitations in concentration, persistence, or pace were moderate to determine the severity of Plaintiff's mental impairments, the ALJ provided no

further discussion of Plaintiff's moderate limitations specific to his RFC analysis. "An ALJ may not, by merely explaining [his] reasons for grading a limitation as moderate in step three, avoid the requirement to account for this moderate limitation in the RFC assessment." *Knight v. Comm'r of Soc. Sec. Adm.*, No. 9:15-cv-01512-JMC, 2016 WL 4926072, at *5 (D.S.C. Sept. 16, 2016). Thus, that the ALJ in this case offered reasons for finding that Plaintiff's limitations in concentration, persistence, or pace were moderate does not obviate the requirement to account for Plaintiff's moderate limitation in the subsequent RFC evaluation. Further, the Court notes that, although the ALJ relied on Dr. Kelly's opinion to find that Plaintiff was capable of performing "tasks commonly found in a work setting that involve no more than simple, routine and repetitive job tasks" [R. 80], the ALJ's decision fails to mention any finding by Dr. Kelly that Plaintiff is capable of staying on task or maintaining a regular work schedule. As the Fourth Circuit in *Mascio* made clear, remand is warranted when an ALJ "g[ives] no explanation" for why the "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [the claimant's RFC]." 780 F.3d at 638. Also, as in *Mascio*, the ALJ's hypothetical to the VE in this case did not mention Plaintiff's mental limitations and merely limited Plaintiff to simple, routine, repetitive work. [R. 103–05.] Further explanation and/or consideration is necessary regarding how Plaintiff's moderate limitation in concentration, persistence, or pace does or does not translate into a limitation in Plaintiff's RFC and/or a limitation in the hypothetical to the VE. Accordingly, the Court cannot find the ALJ's RFC determination is supported by substantial evidence.

**Remaining Allegations of Error**

Because the Court finds the ALJ's failure to properly explain his consideration of Plaintiff's moderate limitations in concentration, persistence, or pace in formulating the RFC and posing questions to the VE is a sufficient basis to remand this matter for further consideration, the Court declines to address Plaintiff's remaining allegations of error. On remand, however, the Commissioner should consider Plaintiff's remaining allegations of error.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case be REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

November 29, 2017
Greenville, South Carolina